**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

CAROL SCARLETT, *et al.*,          )
                                   )
     Plaintiffs,          )
                                   )
vs.                                )          Civil Action No. 1:23cv1323
                                   )
NATIONAL SCIENCE FOUNDATION        )
OFFICE OF INSPECTOR GENERAL,       )
                                   )
     Defendant.          )
_____    )

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

Pursuant to Local Rule 7(F)(1), defendant, through its undersigned counsel, hereby respectfully submits the instant memorandum of law in support of its motion to dismiss in the above-captioned action.

## <u>INTRODUCTION</u>

In this action, plaintiff Carol Scarlett seeks monetary relief with respect to the National Science Foundation Office of Inspector General's ("NSF OIG") investigation of allegations into plaintiff's receipt of grant funds from the agency, which plaintiff primarily maintains was undertaken in retaliation for her so-called "whistleblowing" activity. This is now plaintiff's fifth civil action based on the circumstances of that investigation, and the second in which she has sought monetary relief. In a previous – and nearly identical – civil action filed in the United States District Court for the District of Columbia, that court concluded that it was an improper venue for plaintiff's claims, but declined to transfer the action because this Court would lack jurisdiction to consider plaintiff's claims. After curing *one* of the jurisdictional problems

identified by the District of Columbia court, plaintiff has now filed the instant action based on the same allegations.

But this Court still lacks subject-matter jurisdiction to entertain plaintiff's claims. The federal statutory provisions that form the primary basis of those claims do not provide the necessary waiver of the federal government's sovereign immunity from suit; indeed, plaintiff is collaterally estopped from relitigating one of these immunity-related issues. Nor does the plaintiff's reflexive citation to the Federal Tort Claims Act ("FTCA") provide her any assistance in this regard, as each of plaintiff's claims are barred by the so-called "discretionary function exception" of the FTCA, which applies to preclude suit based on "decisions by law enforcement regarding whom to investigate, how to investigate, and whether to prosecute." *Blanco-Ayala v. United States*, 386 F. Supp. 3d 635, 640 (E.D. Va. 2019), *aff'd*, 982 F.3d 209 (4th Cir. 2020). And even if plaintiff could get by these jurisdictional hurdles, Virginia common law – which governs the United States's putative liability under the FTCA – does not recognize a cause of action for "retaliatory investigation" or for any of plaintiff's other allegations.

## BACKGROUND

## I.    PLAINTIFF'S INSTANT CIVIL ACTION

Although not short on averments, plaintiff's complaint is somewhat hard to decipher – both in terms of the actual alleged factual circumstances that give rise to plaintiff's individual claims, and the nature of those causes of action. Employing the well-settled axiom that this Court must construe *pro se* pleadings with liberality, *see Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023), however, the below represents both the factual allegations and the claims that appear to be presented within plaintiff's complaint here.

A.    **FACTUAL BACKGROUND**[1]

The instant civil action generally concerns plaintiff's applications for grant money from the National Science Foundation ("NSF"), an independent Executive Branch agency of the federal government, *see* 42 U.S.C. § 1861, and investigation of allegations relating to those grant applications by NSF's Office of Inspector General ("OIG").

1.    **Plaintiff's Grant Applications**

In December 2016, plaintiff – along with her business, Axion Technologies, LLC[2] – received from NSF what she terms "a Phase I, Small Business Innovative Research ("SBIR") grant."  *Compl.* (Dkt. No. 1), ¶5.  Overseen generally by the Small Business Administration, the SBIR program provides grant money – through other federal agencies – to small businesses in order for them to conduct "Federal Research/Research and Development (R/R&D) with the potential for commercialization," and thus kindle "high-tech innovation" in the United States. *About the SBIR/STTR Programs*, < https://www.sbir.gov/about> (visited Jan. 10, 2024); *see also* 15 U.S.C. § 636.  SBIR grants are provided through three separate "phases":  (a) "Phase I" – "for determining, insofar as possible, the scientific and technical merit and feasibility of ideas that appear to have commercial potential"; (b) "Phase II" – to "further develop proposals which meet particular program needs"; and (c) "Phase III" – "for work that derives from, extends, or

---

[1]Consistent with the standards governing adjudication of motions brought pursuant to Federal Rule 12, the following recitation has assumed the veracity of the non-conclusory allegations contained within plaintiff's complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011).  As such, nothing within this recitation should be presumed to be a concession that such facts are, in fact, accurate.

[2]"Axion Technologies, LLC" is listed in the caption as an additional plaintiff, but the actual body of the complaint only identifies a single plaintiff.  Although defendant will discuss the problems with Axion's potential presence as a plaintiff in this civil action in the Argument section below, the following recitation will utilize "plaintiff" in the singular to be consistent with the text of plaintiff's allegations.

completes efforts made under prior funding agreements under the SBIR program."  15 U.S.C. § 636(e)(4).  A "Phase I" SBIR recipient does not *automatically* move on to the other phases of the SBIR grant program; of note here, in order to receive a "Phase II" grant, a "Phase I" recipient must re-apply, and decisions are premised upon, *inter alia*, "the existence of second phase funding from private sector or non-SBIR funding sources."  *Id.* §636(e)(4)(B)(i).

Plaintiff applied for a "Phase II" SBIR grant with NSF in August 2017.  *Compl.*, ¶6. Approximately six months later, in March 2018, plaintiff alleges that NSF – based on counsel provided by an outside accountant – subjected her "Phase II" application to "enhanced criteria" in terms of financial liquidity that was not required by the rules and regulations governing NSF grants at that time.  *Id.* ¶¶7; 24.  And the putative use of that enhanced criteria, which plaintiff maintains was improper, resulted in NSF's denial of plaintiff's "Phase II" application in April 2018.  *Id.* ¶¶9-10.

Plaintiff suggests that she sought to appeal the denial of her grant application.  *Id.* ¶16. But before she formally submitted any such appeal, plaintiff alleges that she spoke by telephone with a NSF representative to learn more about the grounds for the denial, *id.* ¶¶10; 74, and that in one of these conversations – held on April 6, 2018 – the NSF representative advised her to transfer a certain amount of capital "to a liquid, business account" in order to bolster her appeal, *id.* ¶16.

## 2.    NSF OIG's Investigation of the Circumstances Surrounding Plaintiff's Grant Applications

The true gravamen of plaintiff's instant civil action, however, is NSF OIG's subsequent involvement in the circumstances surrounding plaintiff's "Phase II" SBIR grant application through its investigation of two complaints that it received concerning the same.  *First*, on April 5, 2018, NSF OIG received a complaint – one that plaintiff "believes" was submitted by the

same NSF representative with whom she spoke in the immediate aftermath of her grant denial – alleging improprieties surrounding plaintiff's grant application. *Id.* ¶13. *Second*, on June 3, 2018, plaintiff *herself* filed a complaint with NSF OIG, which although not expressly identified here, appears to have contained plaintiff's allegations about being subjected to improper "enhanced criteria" in the consideration of her grant application. *Id.* ¶17.

NSF OIG then proceeded to investigate these two complaints. In particular, NSF OIG, *inter alia,* interviewed both plaintiff and other potential witnesses with respect to the allegations raised. *Id.* ¶¶18-19; 33; 39. During one of these interviews, plaintiff suggests that NSF OIG representatives acted inappropriately by providing a standard warning either against providing untruthful testimony or self-incrimination. *Id.* ¶¶50-51.

NSF ultimately concluded their investigations into the aforementioned complaints. On September 11, 2019, NSF OIG transmitted a letter to plaintiff explaining that it had closed its investigation into *her own* complaint, finding "no evidence to support plaintiff's allegations." *Id.* ¶¶25; 69. NSF OIG's into the complaint *against* plaintiff continued. *Id.* ¶¶42-43. Based on NSF OIG's investigative findings, on November 3, 2021, through the United States Attorney's Office for the Northern District of Florida, NSF transmitted a demand (without commencement of a formal action in federal district court) to plaintiff, seeking to have her reimburse certain amounts to NSF. *Id.* ¶45.

## B.    PLAINTIFF'S CLAIMS

The most difficult portion of plaintiff's complaint to comprehend is the nature of the specific causes of action that she seeks to present in this civil action, and the alleged conduct that gives rise to each. What follows is defendant's best attempt, again consistent with the notion that one must construe *pro se* pleadings liberally, to discern plaintiff's specific legal theories of relief.

*First*, plaintiff entitles her "Count I" as "Whistleblower Retaliation Causing Deprivation of Civil Rights." *Id.* at pp.2; 13. In this regard, plaintiff alleges that NSF OIG's decision to investigate the complaint submitted to them regarding her grant applications was in retaliation for what she terms "whistleblowing" activity or "protected disclosures" under federal whistleblower protection statutes. *Id.* ¶¶13-14; ¶¶75-76. Although plaintiff does not precisely identify these "protected disclosures," her complaint seemingly references her telephonic conversations with NSF personnel after the denial of her "Phase II" grant application in which she sought an explanation for the denial. *Id.* ¶74. The source of this claim is also unclear, as plaintiff cites a number of statutory provisions – including 41 U.S.C. § 4712, 42 U.S.C. § 2000d, 18 U.S.C. § 371, and the Federal Tort Claims Act – as the basis on which she seeks relief. *Id.* ¶¶1; 72; 90. Plaintiff seeks "compensatory damage in excess of $7,000,000," *id.* ¶80, although her complaint does not identify with any plausibility the source of such damages.

*Second*, plaintiff entitles her "Count III" as "Investigator Misconduct."[3] Although the source of this cause of action is singularly unclear, plaintiff suggests in this section of her complaint that the aforementioned criminal warning provided to a particular witness, and the fact that the witness himself provided what plaintiff believes to be "inconsistent claims," are the forms of "misconduct" for which she seeks relief. *Id.* ¶¶51-52. Plaintiff also suggests that she seeks to include within this claim the same allegation that NSF OIG intentionally engaged in this

---

[3]Plaintiff also identifies – somewhat – a "Count II," called "Witness Intimidation." *Compl.*, at p.9. But because all of the "allegations" purportedly relevant to this "Count" appear in the "Facts of the Occurrence" section of the complaint, and are not repeated in the "Statement of Complaint" section – in which plaintiff makes specific monetary demands with respect to her *other* claims (*i.e.*, "Count I" and "Count III") – defendant has not considered this an actual cause of action within plaintiff's complaint. It bears mentioning in this regard that the specific factual allegations that appear to correspond to this "Count II" do not aver any "witness intimidation" whatsoever; rather, it is simply a recitation of NSF OIG's informal demand for reimbursement from plaintiff based on its investigative findings.

investigation in order to retaliate against her for her so-called whistleblowing. *Id.* ¶81. On this claim, plaintiff seeks "$5,000,000 [] in estimated damages," *id.* ¶92, although again her complaint does not identify with any plausibility the source of such damages.

## II.    OTHER LITIGATION

But this is not the first civil action that plaintiff has filed over the circumstances outlined in her complaint here. Far to the contrary, this is plaintiff's *fifth* civil action – the previous four were filed in the United States District Court for the District of Columbia. Three of those previous actions sought relief against NSF or NSF OIG under the Freedom of Information Act; two of which currently remain pending. *See Scarlett v. NSF*, No. 1:19cv25 (D.D.C.) (closed); *Scarlett v. NSF OIG*, No. 1:21cv819 (D.D.C.) (currently pending) (challenging response to FOIA/Privacy Act request for documents related to complaint submitted to NSF OIG against plaintiff); *Scarlett v. NSF OIG*, No. 1:22cv3451 (D.D.C.) (currently pending) (challenging response to FOIA request for documents related to plaintiff's own complaint to NSF OIG).

But of primary importance to the instant action is *Scarlett v. NSF OIG*, No. 1:22cv188 (D.D.C.), which – in many ways – is a carbon copy of plaintiff's complaint here. *Compare id.* (Dkt. No. 16) *with Scarlett v. NSF OIG*, No. 1:23cv1323 (E.D. Va.) (Dkt. No. 1). Plaintiff there presented the same two general causes of action, for "Whistleblower Retaliation" and "Investigator Misconduct," as she presents here. *Scarlett*, No. 1:22cv218 (D.D.C.) (Dkt. No. 16, ¶¶54; 61). NSF OIG moved to dismiss, or in the alternative, to transfer the action on venue grounds to this Court. *Id.* (Dkt. No. 17).

The District Court (Howell, C.J.) granted NSF OIG's motion, dismissing the action. The court initially concluded that venue over plaintiff's claims was not proper in the District of Columbia. *Id.* at 10-11. But rather than transfer the case to this Court – which it concluded *was*

a proper venue – it dismissed plaintiff's action because, pursuant to 28 U.S.C. § 1406, "review" of plaintiff's "claims demonstrate[d] 'significant substantive problems'" that would render transfer not in the "interests of justice." *Id.* at 11-16. In particular, the Court held that no district court would possess subject-matter jurisdiction over plaintiff's "Whistleblower Retaliation" claim, because the statute on which plaintiff premised that claim – 41 U.S.C. § 4712 – did not waive the federal government's sovereign immunity from suit. *Id.* at 13. The Court also concluded that plaintiff could not proceed on either of her claims even if construed to be brought under the Federal Tort Claims Act ("FTCA"), because plaintiff had not first presented an administrative claim to NSF OIG. *Id.* at 14-15.

## ARGUMENT

### I. GENERAL STANDARDS

#### A. FEDERAL RULE 12(b)(1)

Federal Rule 12(b)(1) serves as the appropriate vehicle to challenge the court's subject matter jurisdiction in a particular matter. *See, e.g., Coulter v. United States*, 256 F. Supp. 2d 484, 486 n.3 (E.D. Va. 2003), *aff'd*, 90 Fed. Appx. 60 (4th Cir. 2004). The plaintiff bears the burden of establishing the court's subject matter jurisdiction, and although this Court may utilize the allegations contained within the four corners of the plaintiff's complaint as *evidence* in determining whether it possesses jurisdiction over a dispute, it may also consider other evidence outside the pleadings if necessary. *See Richmond, Fredericksburg, & Potomac R.R. Corp. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Coulter*, 256 F. Supp. 2d at 486 n.3.

#### B. FEDERAL RULE 12(b)(6)

To the contrary, a motion pursuant to Federal Rule 12(b)(6) serves to contest the legal sufficiency of the factual averments contained in plaintiff's complaint. Although a court must

accept all well-pled allegations in adjudicating such a motion, it need not credit allegations that are merely conclusory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). In *Iqbal*, the Supreme Court held as follows with respect to the proper standard of review:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). Accordingly, although (as before) a court is required to adjudge the factual averments contained within a complaint against the substantive law governing the claim, now "where the well-pleaded *facts* do not permit the court to infer more than the *mere possibility* of misconduct," the complaint fails. *Id.* at 679 (emphasis added).

## II.    PRO SE LITIGANTS CANNOT REPRESENT CORPORATE ENTITIES

As noted above, it is unclear from the operative complaint whether Axion Technologies, LLC ("Axion") is intended to be an actual plaintiff in this action – it appears as a plaintiff in the caption of the complaint, but the body of the complaint only lists a single plaintiff (Scarlett herself as an individual), *Compl.*, ¶3, and exclusively utilizes the term "plaintiff" in the singular. Nevertheless, out of an abundance of caution, NSF OIG will consider Axion as a plaintiff, and now seeks its dismissal as a party plaintiff.

To be sure, each of the substantive grounds for dismissal identified below would apply equally to Axion as to Scarlett as an individual plaintiff. But there is an additional ground for dismissal that uniquely applies to Axion as an entity plaintiff – its lack of legal representation in this action. There is a "long line of case law establishing that a 'corporation may appear in the federal courts only through licensed counsel.'" *Perez v. Silva*, 185 F. Supp. 3d 698, 706 (D. Md. 2016) (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993)); *see also Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 829 (1824) ("It is admitted that a corporation

can only appear by attorney . . . "). Put differently, "[c]orporations and partnerships, as artificial

entities, may not appear *pro se*, but must instead appear through counsel." *McGowan v. Cross*,

991 F.2d 790, 1993 WL 125416, at *1 n.1 (4th Cir. Apr. 22, 1993) (per curiam). Because no

licensed attorney has entered an appearance for Axion, it should be dismissed as a party plaintiff.

## III.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED

### A.    PLAINTIFF'S "RETALIATORY INVESTIGATION" CLAIM (COUNT I) SHOULD BE DISMISSED ON SEVERAL GROUNDS

NSF OIG turns first to plaintiff's "Retaliatory Investigation" claim (identified as "Count

I") in which plaintiff generally maintains that NSF OIG investigated the circumstances relating

to plaintiff's grant applications merely in retaliation for her so-called "whistleblowing

activities."[4] As discussed in greater detail below, whether brought through the various federal

statutory provisions plaintiff cites or the Federal Tort Claims Act, this claim cannot proceed and

should be dismissed at the threshold.

### 1.    None of Plaintiff's Cited Federal Statutory Provisions Provide a Cause of Action Against the United States

Plaintiff's complaint suggests that she presents her "retaliatory investigation" claim

through a number of federal statutory provisions – 41 U.S.C. § 4712; 42 U.S.C. § 2000d, and 18

U.S.C. § 371. But it is well-settled that the United States enjoys sovereign immunity from suit

unless Congress has explicitly waived such immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475

(1994); *Pittston Co. v. United States*, 199 F.3d 694, 701 (4th Cir. 1999). And a lack of an

---

[4]It bears mentioning in this context that plaintiff's allegation that she did – in fact – engage in "whistleblowing activities" is entirely conclusory in nature. Plaintiff simply states that she engaged in "whistleblowing about the inappropriately[] enhanced criteria" applied to her "Phase II" SBIR application. *Compl.*, ¶13; *see also id.* ¶12 (noting plaintiff's "criticisms of improper criteria enhancements"). But nowhere within the complaint does plaintiff actually allege – in any non-conclusory fashion – that she issued those criticisms to NSF, let alone NSF OIG, the sole entity that plaintiff has named as a defendant here.

appropriate sovereign immunity waiver precludes this Court from exercising jurisdiction over the given claim. *See Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). As will be seen below, none of the plaintiff's cited statutory provisions waives the United States's sovereign immunity; accordingly, this Court should dismiss Count I of the complaint, pursuant to Federal Rule 12(b)(1), for a lack of subject-matter jurisdiction.

a.      Plaintiff first cites 41 U.S.C. § 4712, a statutory provision that Congress promulgated as a part of the National Defense Authorization Act of 2013, and which generally provides that "an employee of a federal contractor [or grantee] may bring a reprisal claim against the federal contractor [or grantee]." *Nifong v. SOC, LLC*, 190 F. Supp. 3d 549, 555 (E.D. Va. 2016). As Chief Judge Howell already concluded in plaintiff's nearly identical civil action in the District of Columbia, however, "§ 4712 does not waive sovereign immunity" with respect to the federal government. *Scarlett*, 2022 WL 17830227, at *6. Plaintiff is collaterally estopped from re-litigating this holding here, and in any event, Chief Judge Howell was correct – nothing within § 4712 provides a waiver of sovereign immunity so as to subject the federal government to suit pursuant to its terms.

Initially, the doctrine of collateral estoppel precludes plaintiff from re-litigating the issue of whether § 4712 provides her with a cause of action against the federal government. As the Fourth Circuit has repeatedly recognized:

> A party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that 'the issue sought to be precluded is identical to one previously litigated' ('element one'); (2) that the issue was actually determined in the prior proceeding ('element two'); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' ('element three'); (4) that the prior judgment is final and valid ('element four'); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' ('element five').

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Montana v. United States*, 440 U.S. 147, 159 (1979)).  Each of these elements are easily met here.  The issue of whether sovereign immunity precludes plaintiff from pursuing a claim against NSF OIG pursuant to § 4712 is both identical to the issue previously litigated in the District of Columbia and was "actually decided" in that litigation.  Chief Judge Howell's determination was "a critical and necessary part" of her decision in the District of Columbia action; indeed, it was integral to the court's determination *not* to transfer plaintiff's action to this Court on venue grounds.  That District of Columbia judgment is final – given that Chief Judge Howell's decision adjudicated all claims against all parties, *see McFadyen v. Wilson*, 585 Fed. Appx. 135, 135 (4th Cir. 2014) (per curiam) – and there is no question as to its continuing validity.  And finally, the issue was certainly "fully and fairly litigated" in the District of Columbia action, as NSF OIG's motion to dismiss unequivocally raised the issue of the federal government's sovereign immunity from suit under § 4712, and plaintiff had an opportunity to respond to the same.  *See, e.g.*, *Holland v. Kohn*, 12 Fed. Appx. 160, 166 (4th Cir. 2001) (recognizing that "the full-and-fair-opportunity formulation generally requires that a litigant receive 'reasonable notice of the claim against him and opportunity to be heard in opposition to that claim'" (quoting *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982))).

But even if plaintiff were somehow not collaterally estopped, there can be little doubt that Chief Judge Howell's prior conclusion that Congress has retained the federal government's sovereign immunity from suit under § 4712 is correct.[5]  That provision provides, in relevant part:

---

[5]Plaintiff also recognizes this principle, as her complaint expressly provides that she is seeking a "congressional expansion of" § 4712 to allow a whistleblower claim to be "brought against a federal agency."  *Compl.*, ¶1.  This Court, of course, lacks the authority to re-write a statute so as to expand its reach.  *See, e.g.*, *Elec. Battery Co. v. Shimadzu*, 307 U.S. 5, 14 (1939).

> An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1).  The statute, however, only confers a cause of action in federal district court to seek monetary relief for a putative violation of these prohibitions "against the contractor, subcontractor, grantee, subgrantee, or personal services contractor."  *Id.* § 4712(c)(2) ("[T]he complainant may bring a *de novo* action at law or equity *against the contractor, subcontractor, grantee, subgrantee, or personal services contractor* to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy" (emphasis added)).  Nowhere in the statute has Congress conferred any cause of action for monetary relief to a purportedly-aggrieved individual, such as plaintiff here, against a federal agency in a federal district court.  Because § 4712 thus does not provide any indication that Congress sought to waive the federal government's sovereign immunity – let alone the type of "explicit" waiver necessary to subject NSF OIG to suit here – this Court should dismiss plaintiff's § 4712 claim for a lack of subject-matter jurisdiction pursuant to § 4712.

b.    Plaintiff next cites 42 U.S.C. § 2000d – more commonly known as "Title VI" (of the Civil Rights Act of 1964) – which prohibits "race, color, or national origin . . . discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d; *see also Compl.*, ¶72.  At the outset, plaintiff's complaint contains no non-conclusory allegations even suggesting, much less plausibly alleging, that NSF OIG's decision to investigate the circumstances surrounding her grant applications was motivated by "race, color, or national

origin" animus, *see Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010), *aff'd on other grounds*, 566 U.S. 30 (2012); indeed, the gravamen of her claim is that NSF OIG's investigation constituted "whistleblower retaliation."  And in any event, the federal government – of which NSF OIG is part – is not a "program or activity receiving Federal financial assistance."  *See Lane v. Pena*, 518 U.S. 187, 195 (1996) (concluding that "[t]he Department of Transportation, whatever its other activities, is not a 'Federal provider' of financial assistance with respect to the Merchant Marine Academy, which the Department itself administers through the Maritime Administration.").

But plaintiff's putative Title VI claim suffers from a more fundamental defect – again, the lack of any explicit waiver of the federal government's sovereign immunity so as to subject it to suit in this Court.  Title VI itself provides no cause of action whatsoever in an Article III court – in favor of any individual or entity – to remedy an alleged violation of its prohibitions.  *See* 42 U.S.C. §§ 2000d-2000d-7.  The Supreme Court has, however, recognized an *implied* right of action under Title VI against private individuals or entities.  *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 701 (1979).  Nevertheless, although "*private* rights of action may be implied, waivers of sovereign immunity may not."  *Dorsey v. Dep't of Labor*, 41 F.3d 1551, 1555 (D.C. Cir. 1994) (emphasis added); *see also O'Brien v. Moore*, 395 F.3d 499, 503 (4th Cir. 2005).  Put differently, "[w]aivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed,' and cannot "be 'liberally construed.'"  *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)).  And for this reason, the Fourth Circuit has conclusively held that Title VI does not waive the federal government's sovereign immunity from suit.  *See Jersey Heights*

*Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999); *see also Dorsey*, 41 F.3d at 1555; *Freeman v. United States*, 2013 WL 5958144, at *2 (N.D. Cal. Nov. 7, 2013).[6]

As such, this Court should dismiss plaintiff's putative Title VI claim for a lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1).

c.      Finally, plaintiff ostensibly seeks relief pursuant to 18 U.S.C. § 381, a criminal statute that prohibits conspiracy "to commit any offense against the United States, or to defraud the United States."  Although it is unclear how an investigation by NSF OIG – an agency *of* the United States – could possibly constitute an offense *upon* the United States, this claim is again barred by the doctrine of sovereign immunity.  As courts have repeatedly explained, "[i]t is well established that there is no private right of action to pursue claims under federal criminal statutes" generally, let alone a clear waiver of the federal government's sovereign immunity. *Robertson v. Foster*, 2017 WL 1104664, at *6 (D. Md. Mar. 23, 2017); *see also Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842 (E.D. Va. 2017).  And the same is true of § 371.  *See, e.g.*, *Rockefeller v. U.S. Court of Appeals*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003); *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *Thompson v. Eva's Village & Sheltering Program*, 2006 WL 469938, at *6 (D.N.J. Feb. 24, 2006), *aff'd*, 243 Fed. Appx. 697 (3d Cir. 2007).  This Court should therefore dismiss plaintiff's putative § 371 claim for a lack of subject-matter jurisdiction, pursuant to Federal Rule 12(b)(1).

### 2.      Plaintiff Cannot Assert Her Statutory Claims Through the Federal Tort Claims Act

Plaintiff also suggests, in the opening paragraph of her complaint, that she may be also seeking relief for "retaliatory investigation" pursuant to the Federal Tort Claims Act ("FTCA").

---

[6]Insofar as plaintiff is proceeding *pro se*, all opinions cited in this memorandum that are only available through online databases have been attached as DEX B.

Through the FTCA, Congress has waived the United States' sovereign immunity, and – as a general matter – allowed the United States to be held liable for the acts of its employees, but only to the extent that such acts constitute a tort under the common law of the pertinent state.  *See* 28 U.S.C. § 1346(b)(1); *Pledger v. Lynch*, 5 F.4th 511, 522-23 (4th Cir. 2021).  In addition to being limited to the metes and bounds of state law, the FTCA's waiver of sovereign immunity, is further limited by a series of specific exceptions, each of which is considered jurisdictional in nature.  *See Medina v. United States*, 259 F.3d 220, 223-24 (4th Cir. 2001).

Plaintiff's ostensible FTCA claim for "retaliatory investigation" should be dismissed for several independent reasons.  *First*, two exceptions to the FTCA preclude this Court from exercising jurisdiction over any such FTCA claim:  (1) the proper party defendant to a FTCA claim; and (2) the discretionary function exception.  *Second*, there is no common law tort for "retaliatory investigation" under Virginia law, and the closest state law analogue – malicious prosecution – simply does not apply to these circumstances.

a.    This Court should dismiss any FTCA claim here on jurisdictional grounds for two reasons.

*First,* plaintiff has named only a single party defendant to this civil action – NSF OIG.  But as Congress provided in 28 U.S.C. § 2679(a), the only *proper* party defendant to a FTCA claim is the United States itself, not an agency or an agency official in his or her official capacity.  *See Sheridan v. Reidell*, 465 F. Supp. 2d 528, 531 (D.S.C. 2006); *Goode v. DHS*, 815 Fed. Appx. 643, 646 (3d Cir. 2020).  Although this is itself sufficient grounds to justify

dismissal,[7] given the liberality afforded to the pleadings of *pro se* litigants, this memorandum will presume that plaintiff named the United States as party defendant to her FTCA claim.

*Second*, plaintiff's claims are barred by operation of the discretionary function exception. *See* 28 U.S.C. § 2680(a); *Clement v. Hall*, 2023 WL 3669383, at *2 (E.D. Va. May 24) (Nachmanoff, J.), *aff'd*, 2023 WL 6406671 (4th Cir. Oct. 2, 2023). Under the express terms of the FTCA, the United States cannot be held liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Further, where this exception applies, it is well-established that "the courts lack federal subject matter jurisdiction" to hear the case. *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012) (citing *Williams v. United States*, 50 F.3d 299, 304-05 (4th Cir. 1995)). Indeed, the Fourth Circuit has called this the FTCA's "most important" exception. *See McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004) (en banc).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). It protects the government "from being hobbled in the discharge of its policy-driven duties by tort suits," *Baum,* 986 F.2d at 720, and from "liability that would seriously handicap efficient government operations," *Varig Airlines,* 467 U.S. at 814 (internal citations omitted). Further, the exception preserves separation of powers by "prevent[ing] judicial 'second-guessing' of legislative and

---

[7]This is especially so here inasmuch as the District of Columbia court explained this very concept to plaintiff in dismissing her previous civil action. *See Scarlett*, 2022 WL 1780227, at *6 n.5.

administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*; *see also Tiffany v. United States*, 931 F.2d 271, 276 (4ᵗʰ Cir. 1991).

The Fourth Circuit has held that the very action that gives rise to Count I of plaintiff's complaint – the decision by NSF OIG to investigate the circumstances of plaintiff's grant applications – is covered by the discretionary function exception. Indeed, "it is well-established that decisions by law enforcement regarding whom to investigate, how to investigate, and whether to prosecute constitute discretionary authority by government officials." *Blanco-Ayala v. United States*, 386 F. Supp. 3d 635, 640 (E.D. Va. 2019), *aff'd*, 982 F.3d 209, 215 (4ᵗʰ Cir. 2020) ("No one can doubt that the investigation of (potential) crimes is a 'discretion laden subject'" (quoting *Linder v. United States*, 937 F.3d 1087, 1091 (7ᵗʰ Cir. 2019))); *see also Medina*, 259 F.3d at 227-28. Other courts have held similarly. *See, e.g.*, *Murphy v. United States*, 64 Fed. Appx. 250, 250 (D.C. Cir. 2003) (per curiam) (holding that FTCA claim premised upon decision "whether to open a special investigation" was barred by the discretionary function exception); *French v. United States*, 195 F. Supp. 3d 947, 955 (N.D. Ohio 2016); *Burgess v. Watson*, 2014 WL 4540256, at *3 (M.D.N.C. Sept. 11, 2014). Put simply, "[t]he overwhelming consensus of federal case law establishes that criminal law enforcement decisions – investigative and prosecutorial alike – are discretionary in nature and, therefore, by Congressional mandate, immune from judicial review." *Mesa v. United States*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993), *aff'd*, 123 F.3d 1435 (11ᵗʰ Cir. 1997).

The same result obtains through an application of the analytical framework that the Supreme Court has adopted to determine whether conduct by a federal agency or employee fits within the discretionary function exception. The Fourth Circuit has summarized this inquiry in the following fashion:

> The first step is to decide whether the conduct at issue involves "an element of judgment or choice" by the employee, rather than, for example, "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." The second step is to determine whether that judgment "is of the kind that the discretionary function exception was designed to shield" in that the judgment relates to a governmental action or decision "based on considerations of public policy."

*Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536, 536-37 (1988)). On the first step of this analysis, there is no provision of law or regulation mandating a precise course of action when a NSF OIG official is determining whether to open an investigation into certain allegations; to the contrary, NSF OIG's governing *I-Manual* simply provides "general[]" "criteria to be considered when evaluating allegations to determine whether to open an investigation." *Defendant's Exhibit* ("DEX") A.[8] Courts have repeatedly held that the provision of these types of "guidelines" do not "specifically prescribe[] a course of action" for purposes of the discretionary function, but rather, "clearly grant[] [] officers discretion to make choices." *Hardiman v. ]United States*, 945 F. Supp. 2d 246, 255 (D. Mass. 2013); *see also Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1221 (10th Cir. 2016); *Priah v. United States*, 590 F. Supp. 2d 920, 939 (N.D. Ohio 2008). And on the second prong of the framework, there can be little doubt that NSF OIG's decision whether to investigate certain allegations is imbued with public policy concerns. Leaving aside the well-established authority creating a "strong presumption" that a discretionary decision (at prong one) is related to public policy (at prong two), *see Clendening v. United States*, 19 F.4th 421, 435 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 11 (2022), such investigatory decisions – as NSF OIG's

---

[8]The more generally applicable guidelines promulgated by the Council of the Inspectors General on Integrity and Efficiency ("CIGIE") are of a similar import. *See CIGIE, Quality Standards for Investigations*, *available at* <https://www.ignet.gov/sites/default/files/files/QAR%20INV%20Quality%20Standards%20for%20Investigations%202011%20Appendix%20I.pdf> (visited Jan. 11, 2024).

manual itself explicitly states, *see* DEX A – implicate policy choices related to limited economic resources and those types of potential violations on which a law enforcement agency wishes to prioritize, *see Blanco-Ayala*, 982 F.3d at 217-18.

b.      Even if this Court could exercise subject-matter jurisdiction over plaintiff's FTCA claim for "retaliatory investigation," that claim would fare no better on its merits, and this Court should dismiss the same pursuant to Federal Rule 12(b)(6).  Initially, because the United States' liability under the FTCA is governed by the relevant state's common law of tort, plaintiff's reliance on the various federal statutes cited above provide her no assistance whatsoever:

> This conclusion that the FTCA does not waive the United States's immunity against liability for violation of its own statutes, absent specific language in the substantive federal statute allegedly giving rise to the duty, comports with the universally accepted position that "law of the place," as used in the FTCA, refers to state and local law, not federal law.

*Williams v. United States*, 242 F.3d 169, 173 (4th Cir. 2001); *see also Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995) ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA."); *Art-Metal U.S.A. v. United States*, 753 F.2d 1151, 1157 (D.C. Cir. 1985) (same).

As such, in order to state a plausible claim for relief here, plaintiff's allegations must constitute a particular tort recognized by the common law of Virginia (given that the NSF OIG officials at issue here were working out of the agency's Alexandria headquarters).  *See Starr v. United States*, 940 F. Supp. 916, 918 (E.D. Va. 1996); *see also Haughton v. DHS*, 2021 WL 5989210, at *6-7 (D. Md. Dec. 17, 2021) (dismissing FTCA claims because plaintiff failed to state plausible common law tort claims under Maryland law).  But undersigned counsel's research has not revealed any Virginia decision creating a common law tort action for

"retaliatory investigation."[9]  In fact, the closest analogue to plaintiff's claim under Virginia law appears to be one for malicious prosecution, but this too provides plaintiff little assistance. Under Virginia law, one seeking relief for malicious prosecution must demonstrate "that *the prosecution* was (1) malicious; (2) instituted by, or with the cooperation of, the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Hudson v. Lanier*, 497 S.E. 2d 471, 473 (Va. 1998) (emphasis added); *see also Lee v. Southland Corp.*, 244 S.E. 2d 756, 758 (Va. 1978).  The Virginia Supreme Court's use of the term "prosecution" is key here, as Virginia law requires the commencement of a "judicial proceeding" to inculcate liability for malicious prosecution.  *See, e.g., Brice v. Nkaru*, 220 F.3d 233, 237 (4th Cir. 2000); *Beasley v. Consolidation Coal Co.*, 2012 WL 2798805, at *6 (W.D. Va. June 13, 2012).  And plaintiff's complaint concedes that no "judicial proceeding" of any kind – much less a "criminal prosecution" – has been brought against her; instead, the United States Attorney's Office for the Northern District of Florida and NSF have made informal demands of her for reimbursement of certain funds.

Accordingly, plaintiff has not stated a plausible claim for "retaliatory investigation" under the FTCA, and this Court should dismiss any such claim pursuant to Federal Rule 12(b)(6).

---

[9]Indeed, although plaintiff's allegations here universally maintain that NSF OIG's investigative actions were *intentional*, it bears mentioning here that federal courts in Virginia have held that Virginia common law does not recognize a cause of action for "*negligent* investigation."  *See Durham v. Horner*, 759 F. Supp. 2d 810, 815 (W.D. Va. 2010), *aff'd on other grounds*, 690 F.3d 183 (4th Cir. 2012).  And although a Fourth Circuit panel more recently reversed another Eastern District jurist's entry of judgment on this same issue, it did so only based on its view that the Virginia state courts – on remand from federal district court after removal – should have the opportunity to opine on this specific question of Virginia law in the first instance.  *See Safar v. Tingle*, 859 F.3d 241, 251 (4th Cir. 2017), *rev'g*, 178 F. Supp. 3d 338, 352 & n.13 (E.D. Va. 2016).

**B.**    **PLAINTIFF'S CLAIM FOR "INVESTIGATOR MISCONDUCT" (COUNT III) SHOULD BE DISMISSED**

This leaves plaintiff's claim for "Investigator Misconduct" (Count III), in which plaintiff ostensibly seeks monetary relief for NSF OIG's decision to warn a third-party witness about his obligations to provide honest testimony during his investigatory interview (or against self-incrimination). Put differently, whereas plaintiff's initial "retaliatory investigation" claim focused on the decision to investigate the circumstances surrounding her SBIR grant applications at *all*, this claim appears to focus on the *manner* by which NSF OIG conducted that investigation (or at least one aspect of it). But this distinction is truly one without a difference. Almost the identical analysis provided above with respect to plaintiff's "retaliatory investigation" claim applies with equal force here; as such, this Court should dismiss this claim for a lack of subject-matter jurisdiction and for failure to state a plausible claim, pursuant to Federal Rule 12(b)(1) and (b)(6).

Initially, the same threshold jurisdictional problems that require the dismissal of the "retaliatory investigation" claim are fatal to this additional claim. Plaintiff does not seem to seek application of the federal statutory provisions identified in her complaint (*e.g.*, § 4712) to her "investigator misconduct" claim; if she did, Congress has also not waived the United States's sovereign immunity from suit under these statutory provisions for the same reasons articulated above. *See supra* Part III.A.1. Nor can plaintiff utilize the FTCA to vest this Court with jurisdiction over this claim, as plaintiff has not named the United States as the party defendant, and the discretionary function exception similarly applies to the putative conduct at the heart of this claim. With respect to the latter, the discretionary function exception precludes FTCA claims premised on "decisions by law enforcement regarding whom to investigate, *how to investigate*, and whether to prosecute constitute discretionary authority by government officials."

*Blanco-Ayala*, 386 F. Supp. 3d at 640 (emphasis added); *see also Dupris v. McDonald*, 2012 WL 210722, at *10 (D. Ariz. Jan. 24, 2012) ("Courts have applied the exception despite investigative deficiencies, including mislabeling, altering, and failing to obtain and preserve physical evidence, irregularities in the autopsy and interviewing procedures, and failure to consider all of the evidence."), *aff'd*, 554 Fed. Appx. 570 (9th Cir. 2014); *Valdez v. United States*, 2009 WL 2365549, at *6 (S.D.N.Y. July 31, 2009).  And with a particular focus on NSF OIG operations, the governing investigative manual does not prescribe a precise methodology on how officials are to ask questions during an interview in order to obtain truthful factual testimony.  DEX A.  Put simply, there can be little doubt that plaintiff's "investigator misconduct" claim is barred by application of the discretionary function exception.[10]

Nor does plaintiff's "investigator misconduct" claim state a plausible cause of action under Virginia law.  Similar to the analysis above, Virginia common law does not appear to recognize a claim for "investigator misconduct," and the analogous claim of malicious prosecution does not apply for at least the simple reason that no "judicial proceeding" was ever commenced against plaintiff.

///

///

---

[10]For the reasons NSF OIG provided above, *see supra* n.3, the potential "Count II" (entitled "Witness Intimidation") suggested in plaintiff's complaint does not appear to be an *actual* claim.  But even if it were an actual claim, each of the grounds identified in this memorandum – with respect to either plaintiff's "retaliatory investigation" or "investigatory misconduct" claim – would equally require dismissal.  The allegations surrounding this "claim" do not in any way discuss "witness intimidation"; instead, they relate solely to the Department of Justice's informal demand for reimbursement.  If the decision of whether to *prosecute* someone is covered by the discretionary function exception, the decision to utilize a much lighter enforcement option – such as an informal demand for reimbursement – is equally covered.

## <u>CONCLUSION</u>

For the reasons articulated above, this Court should dismiss the instant action for a lack of subject-matter jurisdiction or for failure to state a plausible claim upon which relief can be granted.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

<u>       /s/       </u>
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3891
Fax:   (703) 299-3983
Email: dennis.barghaan@usdoj.gov

ATTORNEYS FOR DEFENDANT

<u>Date</u>:  January 11, 2024

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following:

Dr. Carol Scarlett
1417 Ginger Lane
Naperville, Illinois  60565
Email: cyscarlett@gmail.com

Date: January 11, 2024                             _____/s/_____
                                                   DENNIS C. BARGHAAN, JR.
                                                   Assistant U.S. Attorney
                                                   2100 Jamieson Avenue
                                                   Alexandria, Virginia 22314
                                                   Telephone: (703) 299-3891
                                                   Fax:         (703) 299-3983
                                                   Email:  dennis.barghaan@usdoj.gov

                                                   ATTORNEYS FOR DEFENDANT