IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CAROL SCARLETT<br>           *Plaintiff*,<br><br>   v.<br><br>NATIONAL SCIENCE FOUNDATION<br>OFFICE OF INSPECTOR GENERAL,<br>           *Defendant*. | Case No.: 1:23-cv-01323 (MSN/JFA) |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant National Science Foundation Office of Inspector General's ("OIG") Motion to Dismiss (ECF 12) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon consideration of the pleadings and for the reasons set forth below, the Court will **GRANT** the motion.

**I.   BACKGROUND**

This case arises from two investigations conducted by the OIG. Plaintiff Carol Scarlett, a former recipient of a National Science Foundation ("NSF") grant, alleges that the OIG used its investigative powers to retaliate against her for complaints she lodged against the NSF. ECF 1 ("Compl.") ¶ 3.

On December 5, 2016, Dr. Scarlett received a "Phase I" Small Business Innovative Research ("SBIR") grant from the NSF.[1] *Id.* ¶ 5. In August 2017, after completing Phase I, Dr.

---

[1] The SBIR program awards funding to small businesses to develop their technology and "chart a path towards commercialization." U.S. SMALL BUS. ADMIN., "America's Seed Fund," https://www.sbir.gov/about (last visited July 17, 2024). The program is structured in three phases. *See* 15 U.S.C. § 638(e)(4). Phase I determines "the scientific and technical merit and feasibility of ideas that appear to have commercial potential." *Id.* § 638(e)(4)(A). Phase II awards are "based on the scientific and technical merit and feasibility of the proposals, as evidenced by the first phase" and considering the proposal's commercial potential. *Id.* § 638(e)(4)(B). Phase III "derives from, extends, or completes efforts made under prior funding agreements." *Id.* § 638(e)(4)(C).

Scarlett applied for Phase II of the SBIR program. *Id.* ¶ 6. On April 2, 2018, her application was denied. *Id.* ¶ 9. Dr. Scarlett alleges her application was subjected to inappropriately enhanced criteria for "financial liquidity."[2] *Id.* ¶¶ 7, 13. Dr. Scarlett alleges that prior to the denial of her application, NSF employees and contractors made "false statements" and filed reports containing "false information" about her business. *Id.* ¶¶ 7, 8, 10.

On June 3, 2018, Dr. Scarlett filed a complaint (the "June complaint") with the OIG regarding the "enhancement of grant criteria" and "bullying tactics" allegedly used by the NSF to pressure her to transfer funds to her business accounts. *Id.* ¶¶ 18, 78.2(ii). The OIG investigated and closed Dr. Scarlett's June complaint on September 11, 2019, "stating that they had found no evidence to support" her allegations. *Id.* ¶ 25.

Prior to the June complaint, the NSF had filed its own complaint against Dr. Scarlett on April 5, 2018 (the "April complaint").[3] *Id.* ¶ 13. The April complaint requested "further inquiry" as to whether Dr. Scarlett had violated SBIR's requirement of a "51% employment commitment at the SBIR awardee firm" by working full-time as a professor at Florida A&M University while receiving Phase I funding. Pl. Ex. 1 at 2. The April complaint appears to have been prompted by a letter sent by Dr. Scarlett on March 5, 2018, in which she stated that her "current burn rate" would require her to "continue working full-time with [her] current employer." *Id.*

---

[2] Dr. Scarlett alleges she spoke with an "NSF externally hired CPA Firm" which told her she needed "twenty-four times the stated NSF criteria for financial liquidity" to qualify for a grant. Compl. ¶ 7. On April 6, 2018, after her application was denied, Dr. Scarlett spoke with NSF Branch Chief Charles Zeigler, who "pressed [her] to move twenty-four times the company's one-month burn to a liquid[] business account and file all new financial paperwork" before appealing the denial. *Id.* ¶ 16. Dr. Scarlett has filed a separate lawsuit against the NSF regarding their denial of her Phase II grant. *See Scarlett v. Nat'l Sci. Found.*, No. 1:24-cv-386 (E.D. Va., filed Mar. 11 2024).

[3] Dr. Scarlett provides a copy of an email apparently initiating the complaint, with the sender's and recipient's names redacted. ECF 1-2 ("Pl. Ex. 1") at 1, 2. While the identity of the author of the complaint is unknown, Dr. Scarlett believes it to be NSF Branch Chief Charles Zeigler. Compl. ¶ 13.

The OIG's investigation of the April complaint has continued to the present, overlapping with the investigation and conclusion of Dr. Scarlett's June complaint.[4] Compl. ¶¶ 40, 75, 78. On November 3, 2021, the OIG sent Dr. Scarlett a demand letter through the U.S. Attorney's Office for the Northern District of Florida "for repayment."[5] *Id.* ¶ 45. On August 24, 2023, the NSF "sent yet another demand letter." *Id.* ¶ 41. It appears that Dr. Scarlett has not agreed to make the demanded repayment. *See id.* ¶ 46.

Dr. Scarlett alleges that the OIG's investigations of the April and June complaints were conducted improperly and as retaliation for her complaints lodged against the NSF. *Id.* ¶¶ 40, 41. Dr. Scarlett characterizes the OIG's investigation of the June complaint as a "sham investigation" conducted "with the intent of covering up violations of federal regulation and discriminatory practices." *Id.* ¶ 81. Dr. Scarlett alleges that investigators made statements that "reflect bias" and failed to fully investigate inconsistent and suspect claims made by an NSF contractor. *Id.* ¶¶ 51, 59-68. She further alleges that the OIG closed out the June investigation in a manner which violated reporting requirements found in 41 U.S.C. § 4712(b).[6] *Id.* ¶¶ 70, 71.

Regarding the investigation of the April complaint, Dr. Scarlett alleges that the OIG "continued and even accelerated" its investigation in order "to dissuade [her] from coming

---

[4] Dr. Scarlett characterizes the filing of this complaint as "retaliation for Plaintiffs whistleblowing about the inappropriately[] enhanced criteria" for liquidity which she had faced. Compl. ¶ 13. Dr. Scarlett had not yet filed her own complaint with the OIG, but asserts that the April complaint "was filed very shortly after [she] questioned her proposal decline." *Id.* ¶ 28.

[5] Dr. Scarlett does not explain the basis of this demand for repayment. The OIG states that "[b]ased on NSF OIG's investigative findings, on November 3, 2021, through the United States Attorney's Office for the Northern District of Florida, NSF transmitted a demand (without commencement of a formal action in federal district court) to plaintiff, seeking to have her reimburse certain amounts to NSF." ECF 13 ("Mem.in Supp. Mot. to Dismiss") at 5, 21. Presumably this relates to the April investigation.

[6] § 4712(b) requires that the OIG investigate complaints of reprisal against federal contractors and grantees. 41 U.S.C. § 4712(b). The OIG must determine whether the complaint is frivolous, fails to state a claim, or has been addressed in a prior proceeding within 180 days after receiving the complaint. *Id.* § 4712(b)(2)(A). Upon the conclusion of the investigation, the OIG must submit a report of its findings to the person concerned and the head of the agency. *Id.* However, as explained in Section IV, these statutory provisions do not apply to the OIG's investigation of the June complaint.

3

forward" regarding her allegations against the NSF. Compl. ¶¶ 76, 89. For example, Dr. Scarlett claims that "about a week after she gave an interview to an OIG Special Agent investigating her [June] complaint, she received a subpoena for her company's financial records and all personnel records from the OIG." *Id.* ¶ 77. Dr. Scarlett alleges that the timing of the subpoena, one week after an interview in which she alleged "illegal enhancement of grant criteria" and "potential bad faith contracting," was meant to serve as a "significant deterrent." *Id.* ¶ 78.4.

Dr. Scarlett alleges that the OIG took further "aggressive, draconian tactics" which would make a reasonable person feel "harassed, threatened and intimidated." *Id.* ¶ 77. As she "rushed to gather information" pursuant to the OIG's subpoena, "she was informed that she would not be given any secure links," which is the "typical means of supplying records." *Id.* ¶¶ 77, 78.2(v). As a result, Dr. Scarlett had to transmit personnel records via email, leading her to fear that her "electronic records could be compromised." *Id.* ¶ 77. Dr. Scarlett also alleges that the OIG "requested records not related to the grant." *Id.* ¶ 78.2. Lastly, Dr. Scarlett alleges that she learned her Phase I contract "violated federal contract and labor laws," giving the OIG further incentive to retaliate against her. *Id.* ¶ 33-34.

## II. PROCEDURAL HISTORY

In January of 2022, Dr. Scarlett filed a lawsuit against the OIG in the United States District Court of the District of Columbia ("D.D.C."). *Scarlett v. Nat'l Sci. Found. Off. Of Inspector Gen.*, 2022 WL 17830227, *7 (D.D.C. Dec. 21, 2022). The suit alleged that "NSF denied her a research grant, then engaged in a cover-up of its wrongful denial by retaliating against plaintiff and conducting a 'sham investigation'" in violation of "a contractor whistleblower protection provision of 2013 National Defense Authorization Act, 41 U.S.C. § 4712."[7] *Id.* at *1. Dr. Scarlett also

---

[7] Dr. Scarlett also brought a breach of contract claim against the OIG. *Scarlett*, 2022 WL 17830227 at *6. This claim was dismissed for failure to state a claim, because "plaintiff ha[d] failed to allege both that she entered a contract with

4

alleged a breach of contract claim. *Id.* *6. In December 2022, the D.D.C. dismissed the case. *Id.* at *21. The court found that the District of Columbia was an improper venue for the suit, but found that transfer "would not be in the interest of justice" because federal courts lacked subject matter jurisdiction over her claims. *Id.* at *21.

Specifically, the court found that it lacked subject-matter jurisdiction because "[t]he pleaded cause of action for Count One, under the NDAA, 41 U.S.C. § 4712, does not waive sovereign immunity." *Id.* at *17. The statute provides for suits against federal government contractors, but not "lawsuits against the federal government itself." *Id.* at *18. Alternatively, the court liberally construed Dr. Scarlett's claims as the claims under the Federal Torts Claims Act ("FTCA"), and found that it lacked jurisdiction because Dr. Scarlett had failed to exhaust her administrative remedies as required by the FTCA, 28 U.S.C. § 2675(a).[8] *Id.* at * 19-20.

On September 28, 2023, Dr. Scarlett filed the instant action in this Court against the OIG, seeking relief "through the Federal Tort Claims Act."[9] Compl. at 1. On January 11, 2024, the OIG moved to dismiss the case. ECF 12 ("Mot. to Dismiss"). On January 22, 2024, Dr. Scarlett filed a response in opposition to Defendant's motion. ECF 16 ("Opp. I"), and an Amended Response in Opposition on January 23. ECF 17 ("Opp. II").[10] Dr. Scarlett additionally filed a "Response to

---

the NSF OIG and that the latter breached any obligation to her as a result of such a contract." *Id.* at *21. Dr. Scarlett has not brought a breach of contract claim before the Court in this case.

[8] The parties agree that since that time, Dr. Scarlett has exhausted her administrative remedies as required by the FTCA. *See* Opp. II at 1-2; Reply at 7.

[9] Dr. Scarlett states that she "seek[s] relief through the Federal Torts Claim Act." Compl. at 1. However, she also references two other statutes, 41 U.S.C. § 4712 and Title VI, 42 U.S.C. § 2000. *Id.* Because Dr. Scarlett is proceeding *pro se*, the Court construes her arguments liberally and has therefore considered if, separate from the FTCA, either of these statutes provide a valid cause of action. However, neither statute gives rise to a valid cause of action within the Court's jurisdiction. As explained in Dr. Scarlett's previous lawsuit, § 4712 "does not . . . provide for lawsuits against the federal government" and does not waive the federal government's sovereign immunity. *Scarlett*, 2022 WL 17830227 at *17-18. Similarly, Title VI does not create a cause of action against the federal government or waive sovereign immunity. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999); *Keener v. United States*, No. 2:22-cv-1640, 2023 WL 2478367 *22 (D.S.C. Mar. 13, 2023) ("[C]ourts have consistently held that Title VI does not apply to programs directed by federal agencies").

[10] To avoid confusion, the Court will adopt the OIG's method of numbering Dr. Scarlett's multiple response briefs. Reply at 1.

5

Defendant's Memorandum of Law" on January 30.[11] ECF 18 ("Opp. III"). The OIG filed a reply on February 5.[12] ECF 21 ("Reply"). The Court is satisfied that oral argument would not aid in the decisional process. Accordingly, this matter is ripe for resolution.

### III. STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction and possess only the jurisdiction granted to them by the United States Constitution and federal statutes. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). When a district court lacks subject matter jurisdiction over an action, the action is subject to dismissal pursuant to Rule 12(b)(1). *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006). When a Rule 12(b)(1) challenge is raised, the burden of proving jurisdiction is on the plaintiff, and the court "may consider evidence outside the pleadings." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A Rule 12(b)(1) motion to dismiss should be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor and City Council of Baltimore*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999)).

### IV. ANALYSIS

---

[11] OIG noted that "the Local Rules do not authorize the filing of such seriatim opposition memoranda," but did not move to strike any of the motions on account of Dr. Scarlett's *pro se* status. Reply at 1. The Court will not consider Dr. Scarlett's first opposition, as it appears to have been superseded by her second opposition. *See* Opp. II.

[12] Dr. Scarlett filed an additional "Surreply" to OIG's Reply on March 8. ECF No. 22. Local Rule 7(F)(1) provides that other than a motion's opening brief in support, the opposing party's responsive brief, and the movant's reply brief, "[n]o further briefs or written communications may be filed without first obtaining leave of Court." Allowing a surreply is within the court's discretion. *See, e.g.*, *United States ex. Rel. Carter v. Halliburton Co.*, 2011 WL 6178878, at *12 (E.D. Va. Dec. 12, 2011) (rev'd on other grounds). An "opposing party may not submit a surreply simply because the movant used their reply brief to further support an argument made in their opening brief or to respond to new arguments in the opposing party's opposition." *Adams v. Applied Bus. Servs.*, 2019 WL 7817080, at *1 (E.D. Va. Aug. 30, 2019) (cleaned up). Plaintiff did not obtain leave of court to file her surreply. Accordingly, the Court will not consider it.

"As a general matter, the United States is immune from suit unless it waives that immunity." *Clendening v. United States*, 19 F. 4th 421, 426 (4th Cir. 2021) (quoting *Sanders v. United States*, 937 F.3d 316, 327 (4th Cir. 2019)). The FTCA waives sovereign immunity for "injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment." *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). However, the FTCA does not waive immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty" by an agency or government employee, "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "Where this discretionary function exception applies, the courts lack federal subject matter jurisdiction." *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012). The plaintiff bears the burden of showing that a "waiver of sovereign immunity exists and that none of the [FTCA's] waiver exceptions apply to his particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

The discretionary function exception applies where the government action at issue "involves an element of judgment or choice" and the judgment is "based on considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). The first prong of this inquiry "boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum v. United States*, 986 F.2d 716, 720 (4th. Cir. 1993). The focus of the second prong is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Where the relevant statute, regulation or agency guideline permits discretion, there is a "strong presumption" that the second prong is met. *Clendening*, 19 F. 4th at 435.

Importantly, the discretionary function exception applies "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Linder v. United States*, 937 F.3d 1087, 1091

7

(7th Cir. 2019) ("But unless §2680(a) is to be drained of meaning, it must apply to discretionary acts that are tortious"). The decisions of government officials "need not be correct" in order to be immune. *Ayala v. United States*, 982 F.3d 209, 216 (4th Cir. 2020). Therefore, "[t]he focus of the inquiry is not on the agent's subjective intent … but on the nature of the actions taken." *Gaubert*, 499 U.S. at 325.

Here, Dr. Scarlett brings an FTCA claim against the OIG for "Whistleblower Retaliation," "Witness Intimidation," and "Investigator Misconduct." Compl. at 2, 9, 10. In essence, Dr. Scarlett alleges that in retaliation, the OIG: 1) improperly opened the April investigation; 2) took improper actions in the course of the April and June investigations; and 3) reached erroneous conclusions in both investigations. *See* Compl. ¶¶ 75, 81, 89. As explained below, Dr. Scarlett has failed to carry her burden to demonstrate that "the discretionary function exception does not foreclose [her] claims." *Ayala*, 982 F.3d at 214.

Applying the first prong of the analysis, the Court must consider whether the OIG's conduct "is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum*, 986 F.2d at 720. The only federal provision that Dr. Scarlett raises is 41 U.S.C. § 4712(b), which governs OIG investigations of reprisals by federal contractors or grantees against their employees. Compl. ¶ 70-71. Dr. Scarlett argues that the OIG failed to make a determination regarding her June complaint within 180 days pursuant to § 4712(b)(2)(a) and failed to submit a final report to her and the head of the agency as required by § 4712(b)(1). *Id.* However, this statute is not relevant here because it applies to investigations of reprisals by a federal "contractor, subcontractor, grantee, subgrantee, or personal services contractor," and not by the federal government itself. 41 U.S.C. § 4712(c)(1); *see also Scarlett*, 2022 WL 17830227, *18 (finding that § 4712 does not "provide for lawsuits against the federal government itself"); *Sharpe v United*

8

*States*, 2024 WL 3363846 *5 (E.D.N.C. July 10, 2024) ("Section 4712(a) prohibits contractors from engaging in reprisals against their employees.").

Other than § 4712(b), Dr. Scarlett does not point to another mandatory federal statute, regulation, or policy that the OIG failed to follow in the course of its investigations of either the April or June complaints.[13] In fact, "[i]t is well-established that decisions by law enforcement regarding whom to investigate, how to investigate, and whether to prosecute constitute discretionary activity by government officials." *Ayala v. United States*, 386 F. Supp. 3d 635, 640 (E.D. Va. May 31, 2019), *aff'd*, 982 F.3d 209 (4th Cir. 2020); *see also Sloan v. U.S. Dept. of Hous. & Urban Dev.*, 236 F.3d 756, 760 (D.C. Cir. 2001) ("The sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice."); *Linder*, 937 F.3d at 1091 ("No one can doubt that the investigation of (potential) crimes … [is a] discretion-laden subject[]."). Accordingly, Dr. Scarlett has not carried her burden under the first prong of the analysis. *See Welch*, 409 F.3d at 651. However, considering Dr. Scarlett's *pro se* status, the Court will analyze each of her claims in greater depth.

First, regarding the OIG's decision to open the April investigation, the OIG's governing "I-Manual" states that "each complaint is evaluated against investigative functions, priorities, and guidelines," and that "the highest priority is given to the most serious allegations and those likely to have a substantive and significant impact on NSF." ECF 13-1; "Def. Ex. A" at 10. The I-Manual provides "enhancement factors" to consider when determining whether to open a case, but stresses that "it is not mandatory that a case be opened" if one or more enhancement factors is met. *Id.* at

---

[13] Dr. Scarlett argues that the exception cannot be applied because "in Virginia, violations of Civil Rights by law enforcement give rise to a state cause of action." However, the relevant inquiry here is whether the OIG failed to follow a federal requirement, not a state requirement. *See Baum*, 986 F.2d at 720. Furthermore, the statute which Dr. Scarlett references is limited to agents of the "Commonwealth or any locality," and therefore does not apply to the OIG. VA. CODE ANN. § 2.2-511.1(b) (2024).

10-11. The I-Manual similarly provides "mitigating factors" which "tend to support decision to not open an investigation." *Id.* at 11. This discretionary language and the inclusion of multiple factors to be balanced by the OIG, leaves no doubt that the decision to open an investigation involves an element of judgment or choice.

Second, Dr. Scarlett alleges that investigators took retaliatory actions in the course of the April and June investigations, including actions relating to the issuance of a subpoena and conduct during witness interviews.[14] Compl. ¶¶ 51, 59-68, 77, 78.2(vi). The OIG is empowered to collect evidence, conduct witness interviews, and issue subpoenas.[15] COUNCIL OF THE INSPECTORS GEN. ON INTEGRITY AND EFFICIENCY, QUALITY STANDARDS FOR INVESTIGATIONS (2011) at 12-13. The OIG is required to conduct its investigation "with due respect for the rights and privacy of those involved." *Id.* at 13. This type of general requirement does not eliminate the OIG's discretion. *See Baum*, 986 F.2d 716, 722 (4th Cir. 1993) (holding that statutory language requiring the National Parks Service to "provide a protected, safe, and suitable" roadway could not "be interpreted as removing all safety-related decisions from the discretion of the agency."); *Holbrook*, 673 F.3d at 347 ("[T]he general language used by Congress to express broad air safety purposes involves significant discretionary elements."). Therefore, the manner in which the OIG conducted it investigations, including issuing subpoenas and interviewing witnesses, involved an element of "judgement or choice." *Berkovitz*, 486 U.S. at 536.

---

[14] Dr. Scarlett alleges that: the timing of the OIG's issuance of a subpoena, one week after she gave an interview regarding her June complaint, was intimidating, threatening, and harassing, Compl. ¶ 77; that investigators "requested records not related to the grant…thus adding to violations of privacy," *Id.* ¶ 78.2(vi); that the OIG did not afford her the "typical means of supplying records," requiring her to send records by email or by postal mail, *id.* ¶ 77; and that investigators made statements that "reflect bias" and failed to fully investigate inconsistent and suspect claims made by an NSF contractor, *Id.* ¶¶ 51, 59-68.

[15] The OIG conducts its investigations "according to the Council of the Inspectors General on Integrity and Efficiency's Quality Standards for Investigations." "What We Do," NSF OIG, https://oig.nsf.gov/investigations/what-we-do (last visited July 15, 2024).

Finally, Dr. Scarlett alleges that the OIG reached erroneous conclusions in both investigations by closing out her June complaint after finding no evidence to support her allegations and by "threaten[ing]" her in demanding repayment through the U.S. Attorney's Office. Compl. ¶¶ 46, 59-68. As the Fourth Circuit has explained, the "later steps" of enforcement following an investigation "are discretionary because they are bound up in the decisions surrounding the investigatory step." *Ayala*, 982 F.3d at 215. The OIG's determinations "depend[ed] in part upon facts gathered during the investigation and the conclusions drawn from those facts." *Id.* Therefore, the OIG's conclusions and the decision to act upon those conclusions involved an element of judgment or choice.

Where the first prong is met, there is a "strong presumption" that the actions were "based on considerations of public policy," and thus satisfy the second prong as well. *See Clendening*, 19 F. 4th at 435. This presumption is confirmed by the I-Manual, which provides enhancement and mitigating factors in order to assist the OIG in "allocat[ing] investigative resources" and "align[ing] investigative activity with NSF OIG OI's strategic goals". Def. Ex. A. at 10. Among the criteria are public policy considerations such as "Congressional request/interest," "[s]ignificant media interest," and "[s]ignificant policy or systemic implications." *Id.* at 10-11; *see also Ayala*, 982 F.3d at 217 (reasoning that federal "officers' decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations," such as allocating their time and legal resources). Accordingly, the OIG's investigative activities satisfy both prongs of the discretionary function exception analysis.

In regard to the discretionary function exception, Dr. Scarlett argues that "false reporting" and "lack of integrity" are "not covered under the discretion to decide 'whom to investigate, how to investigate, and whether to prosecute.'" Opp. III ¶ 42. Similarly, Dr. Scarlett argues that the OIG

11

was "not acting out of discretion" when reporting "falsified" findings regarding the June complaint. *Id*. ¶ 46. In other words, Dr. Scarlett claims that the OIG's actions cannot be discretionary because they were retaliatory. This approach would leave § 2680(a) "drained of meaning." *Linder*, 937 F.3d at 1091. § 2680(a) covers discretionary actions "whether or not the discretion involved be abused." 8 U.S.C. § 2680(a). The Court must determine "whether the discretion exists," and not inquire into "the agent's subjective intent in exercising the discretion." *Holbrook*, 673 F.3d at 350.

Therefore, the Court concludes that the OIG's decision to open the April investigation into Dr. Scarlett, the manner in which it conducted both the April and June investigations, and the conclusions it reached, all fall within the discretionary function exception. This conclusion is consistent with Fourth Circuit precedent applying the discretionary function exception to actions taken during law enforcement investigations, even ones which are erroneous or wrongful. *See Ayala*, 982 F.3d at 216 (finding that the exception applies where officers "wrongly identified" plaintiff as a noncitizen); *Medina v. United States*, 259 F.3d 220 (4th Cir. 2001) (applying the exception where a federal special agent arrested and detained plaintiff on the erroneous belief that he had committed a deportable offense); *Suter v. United States*, 441 F.3d 306 (4th Cir. 2006) (applying the exception to a federal agent's participation in criminal activities as part of an undercover investigation); *see also Burgess v. Watson*, 2014 WL 4540256, at *15 (M.D.N.C. Sept. 11, 2014) (applying the exception to claims that a federal officer was negligent "in instituting and maintaining" a drug charge against plaintiff).

The Court finds similar support from outside of the Fourth Circuit. *See, e.g., Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983) (applying the exception where plaintiff alleged investigative deficiencies by the Justice Department, including that prosecutors "affirmatively misled and

12

presented what proved to be false evidence" to a grand jury); *Donahue v. United States*, 870 F. Supp. 2d 97 (D.D.C. 2012) (applying the exception to claims against the Securities and Exchange Commission for "myriad failures" and "grave errors" committed when investigating numerous complaints against Bernard "Bernie" Madoff, which prevented discovery of his fraudulent activities); *Parker v. United States*, 2011 WL 13189942 (D. Ariz. May 6, 2011) (applying the exception to a claim by a recipient of Small Business Administrative ("SBA") contracts that they were subjected to "a biased, abusive and politically-driven investigation" by the SBA's Office of Inspector General).

For the foregoing reasons, the Court finds that the FTCA does not waive sovereign immunity over Dr. Scarlett's claims against the OIG. Therefore, the Court lacks subject matter jurisdiction over her claims, and will **GRANT** the OIG's Motion to Dismiss.

Pursuant to Fed. R. Civ. P. 12(b)(1), the Court lacks subject-matter jurisdiction to preside over the instant action. Accordingly, it is hereby

**ORDERED** that the Complaint is **DISMISSED**, and it is further

**ORDERED** the OIG's Motion to Dismiss is **GRANTED.**

The Clerk is directed to enter judgment in favor of Defendant pursuant to Rule 58 and to close this civil action.

It is **SO ORDERED**.

/s/ Michael S. Nachmanoff
Hon. Michael S. Nachmanoff
United States District Judge

August 1, 2024
Alexandria, Virginia